Arguments not to exceed 15 minutes per side. Ms. Kruse for the appellate. Good morning, Your Honors. Kelly Kruse on behalf of the appellant C.H. Raches. I'd like to reserve four minutes for rebuttal. All right. Your Honor, this appeal comes before you because it is the plaintiff's contention that the trial court granted summary judgment to the defendant on an issue that it was not asked to render an opinion on. Both parties filed motions for summary judgment. The trial court denied the plaintiffs and granted the defendants. It granted the defendants because it found, or concluded rather, that no purchase orders had been issued and therefore GAMCO was not obligated to pay commissions to the plaintiff. By way of background, although I'm sure you're aware of this, this was a situation where C.H. Raches is the sales representative, GAMCO is the manufacturer. They have a representation agreement. GAMCO terminates that agreement shortly before it gets this big program that it would have to pay big commissions on. The representation agreement, though, does have a provision for post-termination commissions. That provision indicates that GAMCO owes commissions to Raches if it enters into or receives any newly created or existing purchase orders arising out of any long-term arrangements prior to the effective date of termination. Your Honors, that is the sole issue that was before the court. The defendant's motion for summary judgment concludes, It is undisputed that General Aluminum did not accept any long-term arrangement to produce the relevant castings before the party's agreement terminated. Indeed, no long-term arrangement exists as of today. Accordingly, there is no genuine issue as to any material fact, and General Aluminum is entitled to judgment as a matter of law. In its motion and brief, it raised one sole singular issue, and that is, Even in the light most favorable to Raches, the post-termination commission provision cannot, as a matter of law, have been triggered for Chrysler DT castings because no long-term arrangement for the production of such castings had been accepted by General Aluminum as of the termination date. That is the only issue of material fact that was raised by the defendant. Nevertheless, the trial court ruled that because the parties had not presented purchase orders, that summary judgment should be entered in favor of defendant. And it's curious because the district court, in its opinion and order, specifically recognized that the defendant, and I quote, asserted only, end of quote, that the undisputed material facts demonstrated the absence of a long-term arrangement. So this whole issue of purchase orders was not before the court, and it was not material. And I think that's really important. Because it was not material to determine whether or not there was an obligation by GAMCO to pay Raches commissions. That obligation would only be triggered, as GAMCO identified in its brief, if a long-term arrangement existed. You'd also need purchase orders, though, right? In this business, as we indicated in our brief, what happens is the parties enter into this long-term arrangement. And down the road, oftentimes years, as in this case, undoubtedly years, then the purchase orders are entered. But the obligation to pay arises once that long-term arrangement is accepted. The obligation arises from the purchase orders. Don't they get commission on the purchase orders? Right. So if there are no purchase orders, there's no damages, are there? I mean, you may have agreement for a long-term relationship, but until you get a purchase order, so what? There's no damages to collect, right? Right. So that's where the purchase orders come into play, is when there's damages. You're alleging a breach of contract. And essential to that is you have to have some purchase orders they didn't pay your commission from. That's correct, eventually. Eventually, no. I mean, this is not an anticipatory breach of contract action, is it? I mean, you're actually alleging a breach of contract, right? We're alleging that they will owe the commission. They will owe. So it is anticipatory. Yes, it's that, but first there's an initial step, and it's the step that both parties recognized and why we entered into the state, because we said if the court determines that there is a long-term arrangement that was accepted by GAMCO prior to the termination date, then the parties recognize. Then when those purchase orders were to be issued or received, they would have to pay the commissions. But if there's no long-term arrangement, if that first step doesn't exist, then we don't even have to worry about purchase orders. But the contract says that they can terminate the relationship prior. I mean, if the relationship is terminated, then they don't owe commissions for purchase orders that occur after the termination, do they? After the termination date. Yeah. No, no, that's not what it says. It says at least that's... Oh, even once they terminate the relationship, they still have to pay? If they accepted the long-term arrangement for that part prior to the termination date, and that's what's the issue. Here, they did accept that. In the long term, if they agreed to a five-year period, then they're responsible to pay commissions on purchase orders within the five-year term. Exactly, Your Honor, because that's how this industry works. There is, as in this case, in July of 2015, GAMCO accepted the long-term arrangement. I see the lower court saying you just don't have any damages because your commission arises out of failing to pay commissions on purchase orders, and I don't have any purchase orders in front of me to establish that there's a breach of the contract. Well, I think that is what the trial court said. What's wrong with that? What's wrong with that is that we didn't get to that issue yet. We have to resolve... Even on reconsideration, I don't think you presented purchase orders, did you? No, we don't have them, and that's a very important point, if I may. There are none? I believe there are. I believe, based on what we presented to both Your Honors and the trial court, that in early 2018, production of this part was going to begin, but, if I may... Did you have discovery in the case? We had discovery, but we stayed it pending the outcome of these motions because both parties recognized that this was the crucial issue. So you were granted the right to have discovery where you could have gotten these purchase orders that you didn't get. No. Then you brought a motion for summary judgment. The purchase orders, we had asked for all the documents that they had from ZF, who was the customer. No purchase orders were provided. I really don't think they existed as of the time we filed our motions. Well, that's the problem, isn't it? No damage, is it? If you file a motion for summary judgment and you haven't set the facts out that are sufficient for your claim and the other side opposes summary judgment in part on that ground, you say that they didn't, but it looks like they did, then the answer is to throw it out, and then once you get some evidence, you bring another claim. But to say that it shouldn't have been thrown out when you didn't have the elements of the cause of action, that's, I think, what was motivating the district court. That may be, Your Honor, but I think that what's important is I don't think the defendant must have thought the purchase orders were material. If they did, I think they had an obligation to . . . What do you do with this language? They respond to that argument in their brief and they cite portions of their response, which I'm looking at here. And it's on page ID 194. That's in their statement of facts. They say there's no purchase orders, and then if you go down to their argument . . . Let's see. They cite 194. They say, as of the date of this declaration, General Aluminum has not received a production purchase order for DT castings. But that's not argument. That's statement of facts. But then you go down to the argument, and the argument seems to rely on that. And say that . . . Let me see if I can find it. It says you don't have . . . I'm in the wrong place here. Wait a minute. It seems to make that argument. It's not exactly in so many words, but . . . Yeah, this is on page ID 198 or page 17 of your motion. Let's see. The only Chrysler DT-related purchase orders were from components people. As of the date of the attached declaration, General Aluminum had not received a production purchase order. Because no long-term arrangement exists, it's impossible for a purchase order to have been issued. And therefore, impossible for Rackus to succeed in its claim. So it sounds like they're, at least in part, relying on the absence of purchase orders. Well, Your Honor . . . For you to say, well, they never raised the absence of purchase orders is a little bit . . . I mean, it's a little bit oversimplified. If I may, they raised it in the context of their argument that there had to be purchase orders before the termination date, which I would suggest to you is not what is required by the contract. No, that's not required. I understand that. Right, and I believe that . . . They say there aren't any even to date. Well, they said that as of . . . That's why the district court would say, well, okay, you don't have these purchase orders, therefore I'm throwing it out. That doesn't mean you can't come back later and sue, does it? Well, we have. But if I just can address that . . . If you have, could I take . . . Well, okay, finish your thought, then I want to ask you about the things that you've subsequently brought. Two points to that, to your question. One is that the assertions that there were no purchase orders as of the filing of the motions and the response in March and June of 2017. Number one, that was . . . had to be received prior to the termination date, which we argued, and I suggest to you, is contrary to the language of the contract. But number two, if that was a material fact, if that was something that they believed was material to the outcome of their motion, if, in fact, prior to the date on which the court ruled, that fact no longer was true, which I believe to be the case, then under the rules of professional conduct, the defendants had the duty to come back to the district court and say, Your Honor, we made these assertions in our brief. They're no longer true. We're the only ones who have access to that information. The plaintiff does not. I can't issue a subpoena. I can't do more discovery because we've got this stay. So either . . . Why do you have a stay? We had a stay because we both, based on our discussions . . . You got into a stay? We did because we knew . . . You have a stay because of your own actions. Well, we have a stay because both parties recognize that if there was a finding of a long-term arrangement, this is going to probably resolve the case based on our prior discussions. This is why we entered into a stay. There was going to be . . . We exchanged, or we shouldn't say we exchanged. I received, I think, 20,000, 30,000 pages of documents. There was going to be a lot of discovery and a lot of depositions that had to be taken. We both thought it would be in the interest of both parties to get this long-term arrangement issue resolved. Now, if that assertion . . . Presumably, when it was resolved, they would either have to pay the commissions or they wouldn't. Correct. If it was resolved . . . How much those commissions were afterwards. We just would have to use . . . The district court didn't see it that way. The district court thought, you know, I don't want to deal with this until you've got purchase orders. Well, and if that's the case, if that's a material fact, then I think that it was incumbent upon the defendant to come back to the court prior to the time . . . Do you argue that in your brief? Yes, we do. It's in our reply brief. Oh, in your reply brief. All right. I see that you're out of time there. Could I ask about the other suits that she's brought? Sure. They're not part of the record, but I just had this feeling at the end of reading these briefs that I could see what actually you were arguing about. If you basically . . . If there's basic fundamental agreement that you either owe it or you don't, based on this other issue of whether it was a long-term agreement or not, that you just needed a case where there were some purchase orders, then you could resolve that case and it would, in effect, resolve the rest of the purchase orders. Well, Your Honor, just so you understand the status of that case, we did file again. I'm trying to preserve my clients' rights. There's a lot of money at stake. They worked hard to get these commissions and they didn't get them, so we did file again. And the response was a motion to dismiss along with a motion for sanctions. Based on what? So what? Is that the status of this? That's the status right now, is that there's pending . . . They're moving to dismiss on the theory that you can't come back with purchase orders because this case precludes it? Yes. Raise judicata. That's basically what they're arguing. You have some pretty good answers to that under judgment law, but we'll see. Good morning, Your Honors. Adam Kochenrefer on behalf of General Aluminum Manufacturing. I think that this appeal is resolved based on two very simple legal principles. Number one, if you're a plaintiff seeking summary judgment on all of your claims, you have to address all of the elements of those claims. They moved for summary judgment, too. They did. Both did. So you can't blame the court if you as a plaintiff are seeking total victory and then you only address one of the elements of the claims if you brought. Your pleadings down in the court, though, don't address that very directly. You can sort of read it as part of your analysis of the other issue, but this sort of threshold you need a purchase order is not done. I mean, you can say you raised it, but it doesn't really jump out as the fundamental issue that you're now characterizing it as. As the court referenced, it was mentioned in the motion for summary, the fact that there was no production purchase orders. And so the fact that that also goes to the other issue, and it looks like you're raising it there with respect to the other issue rather than we win on that basis alone. If you look at General Luminum's motion for summary judgment, it was saying we have no liability in part because simply not all the prerequisites to an obligation to pay exist here. And so it was incumbent on all the parties to bring forth their evidence at the time of whether there was an issue of fact, and it didn't happen. The other principle that I believe is in play is that if the plaintiff has evidence in its possession that it believes presents an issue of material fact, the plaintiff can't wait until the court decides the motions for summary judgment and then spring the evidence on everybody. You don't get a second bite at the apple here. In the interest of fairness and judicial economy, it's incumbent upon the litigants to present their evidence before the motions are decided, not after. And if we agree on those two legal principles, I think that's what really resolves the appeal here. Do you agree that if there's a long-term arrangement here that before that termination date of their engagement that you owe these? That's the first element. Do you agree to that or not? It would seem like if you agree with that, you wouldn't be litigating so hard to try to get out of that obligation if it's your obligation. If there are purchase orders then that arise out of that. I'm asking if you owe once there are purchase orders. Do you owe it or not? Yes, if there is a long- Why are you so resistant to paying then on purchase orders once there are purchase orders? Well, you are because of this other issue, but the other issue has never been resolved. Shouldn't the court resolve that issue? Well, the court didn't because it found that the elements simply weren't there. How should they proceed in order to get their money? Which you agree they should get if there's a long-term agreement before that certain date. You agree they should get that money, but you appear to be defending a position that they should never get that regardless of whether there was a long-term agreement prior to the termination date. What we're arguing is that Ratchett sat on its rights in the previous litigation and under Sixth Circuit case law- They sat on their rights by suing before they were supposed to sue? How can that be sitting on your rights? They sat on their rights because in their own words, they believed that they had information that showed that purchase orders existed, that there was a virtual certainty that purchase orders existed and they didn't bring it to the court's attention until after the summary judgment motions had been decided. That's how they sat on their rights. And for that reason, they should not get their commissions? Under Sixth Circuit case law and under Rule 60, yes. Under Rule 60? Under Rule 60, a motion for relief from judgment. So if I could back- You sue based on whatever violation, whatever contract breaches there are. You say there were none because there were no purchase orders, no evidence of purchase orders. So they wait until they get purchase orders and then they sue. Why can't they do that? When they filed their complaint, the elements weren't present to assert a breach of contract. Yeah, it was premature. It was premature. So if it's premature, you wait until it's mature and then you bring it. But you don't get told, oh, well, you sought relief when it was premature. Therefore, you don't get it now that it's mature. That seems a little strange. I think a lot of- That's your position though, right? I think a lot of- That's what you're trying to do is to get out of paying the commissions even if there was a long-term agreement prior to the termination date. That's your current litigating position. Well, yes, because that's been Ratchett's action. I mean, Ratchett's actions have taken us to this point. I mean, they decided to bring their motion for summary judgment before one of these two critical elements was present. Gotcha then, right? You sued too soon. You sort of referred to it in your motions. And then the district court noticed that it was too soon and threw it out. And now you're saying, we don't have to pay on our contractual obligation. That's your position now, right? Are we talking about the second suit? I guess we're talking about the second suit, but that's not really before us, right? Correct. And whether there is some res judicata effect to this case or not, we're not going to decide that. I mean, they say they can sue a second time. Again, you obviously, by bringing a motion to dismiss, say you can't. But I'm not going to decide that today. I'm just going to decide whether they had a valid suit for this one that's appealed. Is that what I should do? Yes, Your Honor. That is what is before the court. So there are three orders before the court today. One is on the cross motions for summary judgment. As I said, the court looked at the evidentiary record and correctly found that one of the two critical elements were missing. If you look at Ratchett's motion, they said- I understand what Judge Griffin is saying. I'm just trying to see what's motivating this continued litigation. It seems like there's not much purpose to it, but now I see exactly there's all kinds of purpose to it. There is, Your Honor. I mean, after the court- To protect the subsequent cases when they do have a purchase order from having to pay those is what the motivation for litigation in this case is. Well, that's correct because after the court entered its order on summary judgment in which Ratchett said we are owed commissions, it was a present statement, we are owed commissions, and one of these elements was missing, the court entered its opinion. Ratchett, five days after that, files a motion for relief from judgment under Rule 60. And this is important. And the basis for that is that they had newly discovered evidence. There was three pieces of newly discovered evidence. Number one was a declaration claiming that production of parts began in January of 2018. These dates are important, right? That there was a vehicle production forecast dated February of 2018, and there was an article dated March 5, 2018. Those are the three pieces of evidence. The court issues its order on the cross motions for summary judgment on March 16, 2018. Ratchett has never provided any explanation of why it sat on its rights. Why didn't it file a motion for supplemental briefing? Why didn't it file a motion asking for the state of discovery that they agreed to be lifted? It didn't do anything until it had the advantage of seeing the court's opinion and then started changing its strategy. Ratchett offers some excuses for that. They say, well, we didn't have a copy of the purchase order. Well, you don't really need a copy of the purchase order. What you need is you need to show an issue of material fact that a purchase order exists in order to meet that element. But also Ratchett just claims in its motion that this newly discovered evidence, quote, unquote, that it was bringing meant that it was a virtual certainty. Those are the words. Virtual certainty that a PO had been issued. If that's the case, the state of discovery that they're talking about is relevant. According to them, they knew, they thought they knew that a purchase order had been issued, and they decided to enter into that discovery stipulation. And the Sixth Circuit has said this, quote, Rule 60 was not intended to relieve counsel of the consequences of decisions deliberately made, although subsequent events revealed that such decisions were unwise, end quote. Ratchett has said in their motion for judgment relief that this newly discovered information is, quote, material and controlling and clearly would have produced a different result. If that's the case, why didn't they bring this to the court sooner? Case law states that the parties bringing a motion for relief from judgment have an extremely difficult burden. That's the quote. And Ratchett hasn't met that burden. And the district court did not abuse its discretion. That's the standard on a motion for judgment relief. After the court decides that motion for judgment relief, Ratchett then files a motion for relief to file an amended complaint. That's again reviewed for an abuse of discretion. And Sixth Circuit has stated that amendments after an adverse judgment can only be entered if the standard for changing a judgment under Rule 60 or 59 have been met. Ratchett again goes for Rule 60B, newly discovered evidence. That's the basis for trying to file an amended complaint. And again, they rehash all the old arguments. They bring up those three pieces of information they had before. They also now introduce two additional pieces of information, two additional documents. And by the way, Ratchett had those documents nearly a year before the court had decided the cross motions for summary judgment. And then for those reasons, the district court said, listen, by due diligence, you could have discovered or had this evidence before the court entered its opinion, denied. Under those basis, that's why the district court's order should be upheld. I do want to address, though, and tell the court and talk a little bit about the existence of a long-term arrangement because that is primarily what had been briefed. I want to correct something. Ratchett's kept on saying that the district court found that a long-term arrangement exists. That's not true. It hasn't really been decided by the court. It's hard for me to see how at this point it's relevant. It's our assertion, I'll just address it briefly, that there is no long-term arrangement. They've appointed to this July 2015 supply agreement that largely deals with an entirely different part. There are two or three sentences that address the part that we're talking about, but they don't talk about duration. It's long-term arrangement. You can't read out the term long-term out of the phrase long-term arrangement. There's nothing in duration about that. And I think it's worth— You're right about that. You shouldn't be so resistant to having a court say so. We're here addressing what the district court— It would have been before the court if they had the purchase agreements, and then the court could have ruled on that, and then we could have an appeal on that issue, and justice would be done one way or the other. And you want to win without having the courts rule on that. That's what you want, which I understand. I understand. I'm here addressing the district court's opinion. And I also think it's worth noting that one of the additional documents that Ratches brought up in their motion for leave to file an amended complaint, that was a supply agreement about the relevant part. It was actually the DT part. That was executed in 2017, February 2017, I think. That's after the termination date. Recall one of the elements that we're addressing, there has to be a long-term arrangement before the termination date. And they've tried to point to emails which don't address duration. And by the way, there are also integration— So are you in the long-term agreement? I am. I am. I just want to address it— Or are you?  I just want to address it in the event the court has an interest in that element. That's all. And so, in conclusion, the bottom line here is that Ratches sat on its hands at critical stages of the litigation. At first, it failed to address one of the two elements of its claims and summary judgment motions. Then it failed to timely present evidence. And the district court did not abuse its discretion when it required Ratches to play by the rules that everybody else does. Thank you. Thank you. Thank you. In our response to the defendant's motion, and in our motion, we also attached a number of documents, a number of GAMCO internal documents, that talked about production starting in 2018. Production doesn't start until purchase orders are issued. If the court felt like the existence of purchase orders was crucial to a determination, there was evidence before it that we attached multiple documents that talked about that issue. Then it should have found a question of fact on whether or not there were purchase orders. And I do reiterate that I think that we can't ignore that GAMCO knows, and GAMCO knew in 2018, whether the representations it made to the court, that there were no purchase orders. If they thought that was a material argument, they had a duty to correct it. Now, counsel indicated that Ratches decided to file a motion for summary judgment before it had the purchase orders. We have to keep in mind what the timing was. GAMCO filed its motion first. It filed its motion in March. I don't believe purchase orders would have been entered before discovery closed. Discovery closed in August, so we stayed discovery in June. It was scheduled to close on August 30th. Even by then, it's unlikely that purchase orders would have been entered. So the argument that we are suffering from our own decision to enter into a stay doesn't really pan out when you consider what the timing of it was. And I don't even think we need to get to the motion for reconsideration because, as I said, there's evidence in the record that we presented to the court that production was to start in 18. Both of the parties limited their... I think we're entitled to rely on what GAMCO says. When they say, our argument before this court is that there's no long-term arrangement that's been accepted by GAMCO, and that's the issue we're presenting to your honors, I think we have the right to rely on that's the argument they're presenting to the court that we need to respond to. We did present the documents that we had that were available to us at that time that indicated that purchase orders were coming. Purchase orders are coming doesn't show that you haven't already had a breach. Understood, your honor, but... If you accept that, what's your relief you want from us? What I'd like to have you do is to reverse the district court. I'd like... That the district court should have taken the case even though it didn't have purchase orders? No, I think that what I would like to see is our motion granted indicating that there was a long-term arrangement, which the evidence... Well, if you want to decide long-term arrangement, we didn't have a case before. That's pretty understandable. But we did present the evidence in forms of emails, internal documents, internal summaries, sales reports that purchase orders were coming. I think that's enough. We should just affirm? If we don't think that's enough, we should just affirm? I think that I would suggest to you that at a minimum there was a question of fact on the purchase orders. If that's something that needs to be decided... Even at that time, we presented all kinds of documents that talked about purchase orders are coming. GAMCO is saying in their response, we're not going to... I'm not saying that they're there, though. That's the problem. I understand. In fact, as to whether they're coming... But the issue is... Whether there might be a breach in the future. Well, but GAMCO's already said they're not going to pay. That's why we have to have... That's why this lawsuit is filed. GAMCO's already said, we're not paying you commissions on the DT. That's the whole reason... What you do is you wait until there's a purchase order, and you sue. We can't know about the purchase orders until we sue. We don't get them as a supplier or as a sales representative. They don't get the purchase orders sent to them. We have to sue. We have to do discovery. It turns out things... We don't have those GAMCO documents that say it's going to be January until we sue. So we're between a rock and a hard place. In the meantime, my clients are out a lot of money for the work they did. I understand. But I guess the reason they say you're out is that you sued without doing the discovery to get the purchase orders. Which we couldn't do. Without them, you can't sue, and so therefore you lose. Having done that, it's too late for you to get them in the future, I guess. That's the theory. That is their theory, but I think we presented enough evidence to show that there were going to be purchase orders. They use the word triggered, and it's right. The responsibility to pay the commissions isn't triggered if there's no long-term arrangement. I'm not sure it's the case that you can't sue because you don't have the purchase order. If you could sue for an accounting and request the court to force an accounting, there's no reason you couldn't do that. We'd have to have a basis to ask for the accounting. I think the response to that would have been, you're not entitled to it because there's no long-term arrangement. That would have entitled you to post-termination commissions. Well, the entitlement is predicated on the existence of the purchase orders, which goes to the status of the transactions, which you'd be suing to find out. There are such lawsuits, and there's no reason you couldn't have sued for an accounting. I'm not sure I agree that you couldn't sue. Your Honor, I guess I respectfully... Based on my experience with this case, I think we couldn't ask for an accounting unless that portion of the contract that required a long-term arrangement was satisfied. So they're going to argue, you're not entitled to an accounting because you're not entitled to any commissions because there's no long-term arrangement. And so that was the necessary step in resolving the dispute between the parties. If there's a long-term arrangement, they're going to pay on the purchase orders. They argue there's not a long-term arrangement. Basically, you want an advisory ruling that there was a long-term relationship, but I fail to see how you have a case in controversy without the purchase orders. And the federal courts are not in the business of rendering advisory opinions, and I think that's what you want here. Well, and that's why we presented all of the documents that we did, 10 or 12 that talk about in the future. I don't think the district court has jurisdiction, that's all, because they only have jurisdiction of actual cases and controversies. There's a controversy over what the terms of the contract mean. Yeah, I know, but it's not a case in controversy. But all right, leave that as may. Okay. Thank you, Your Honor. Thank you very much, and the case is submitted. The next case may be called...